## IN THE COURT OF APPEALS OF TENNESSEE
### WESTERN SECTION AT NASHVILLE

WILLIAM TOWNE YOUNG,    )
                                  )

    Plaintiff/Appellee,    )  **Rutherford Chancery No. 93DR-1193**
                                  )

VS.                     )  **Appeal No. 01A01-9610-CH-00473**
                                  )

MARTHA McCOOL YOUNG,    )
                                  )

    Defendant/Appellant.    )

**FILED**

**August 13, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE
THE HONORABLE DON R. ASH, JUDGE

**J. RUSSELL HELDMAN**
Franklin, Tennessee
Attorney for Appellant

**THOMAS C. BINKLEY**
**JEFFREY ZAGER**
**TRABUE, STURDIVANT & DeWITT**
Nashville, Tennessee
Attorneys for Appellee

**AFFIRMED AS MODIFIED**

                                **ALAN E. HIGHERS, J.**

**CONCUR:**

**BEN H. CANTRELL, J.**

**WILLIAM C. KOCH, J.**

    In this divorce action, Martha McCool Young ("Wife") was awarded a divorce from

William Towne Young ("Husband") on the grounds of adultery. Pursuant to a consent decree of divorce, custody of the parties' minor child was awarded to Wife. Wife agreed to obtain medical insurance coverage for the child through her employer, and the parties agreed to divide equally the medical expenses of the child which were not covered by insurance. Wife was awarded an IRA account valued at $29,000 which was titled in Husband's name. In exchange for Wife's receipt of the IRA account, Husband was forgiven any child and spousal support arrearage existing through June 30, 1995, and Wife relinquished any claim she might have against Husband for dissipation of the marital assets on any person other than Wife. Wife was further awarded the Memphis residence and the automobile in her possession. Husband was awarded the Murfreesboro residence, all interest in the Pan American Airlines retirement income plan, the Stones River Country Club membership, and the automobile in his possession. Each party agreed to pay their own attorney fees. After the parties were unable to come to an agreement as to alimony, child support, and the amount of life insurance that Husband would provide for the benefit of Wife and child, the trial court ordered Husband to pay Wife $1,000 per month in rehabilitative alimony for seven years, $1099 per month in child support, and $9,000 in accrued alimony. Husband was ordered to purchase and maintain a $50,000 life insurance policy for the benefit of Wife and a $100,000 life insurance policy for the benefit of the parties' minor child. Husband was further ordered to supply Wife a statement of Husband's total income at the end of each quarter or three-month period, and in the event that Husband's income increases to more than $7,500 per month, Wife may petition the court for an increased award of alimony. Wife appeals the judgment of the trial court arguing that the trial judge erred in declining to recuse himself, in awarding her $1,000 per month in rehabilitative alimony for seven years, in admitting into evidence a Florida child support order, and in determining the amount of life insurance that Husband was to purchase and maintain in order to secure Wife's award of alimony and child support. For the reasons stated hereafter, we affirm the judgment of the court below in all respects except as to Wife's award of alimony and the amount of insurance that Husband shall purchase and maintain for the benefit of Wife.

2

After a twenty-seven and a half year marriage, the parties entered into a consent decree of divorce on the stipulated grounds of Husband's adultery. At the time of trial, Husband was fifty-six years of age, and Wife was fifty-two.

Two sons, who are presently beyond the age of majority, and one daughter, a minor child born on May 28, 1990, were born of the parties' marriage. Husband fathered one child outside of wedlock during the parties' marriage for whom Husband is currently paying $500 per month in child support. The child, age eight, is living in Florida with her mother.

Throughout the parties' marriage, Husband worked in the aviation industry. From 1982 through 1989, Husband was President of Air Tech Services, a company located at the Miami airport which overhauls commercial aircraft. While working for Air Tech Services, Husband participated in marketing and sales and served as a manager. During the period between 1986 and 1989, Husband earned $140,000 per year in salary and bonuses.

In 1990, Husband went to work for Greenwich Air Services, a company involved in the maintenance, repair and overhaul of aircraft engines and aircraft components. Husband was the vice-president of marketing and sales for the company and earned an annual salary of $80,000. Husband left Greenwich Air Services at the end of 1990.

Following his departure from Greenwich Air Services, Husband moved to Smyrna, Tennessee and became the President of Cross Continental Aircraft Services, a commercial aircraft overhaul company. Responsible for marketing and sales activities, Husband served as President of Cross Continental Aircraft Services from the end of 1990 through 1993. Husband's annual base salary in 1990 and 1991 was $100,000. In 1992 and 1993 Husband earned $80,000 as an annual base salary. After earning $84,350 in 1993, Husband left Cross Continental Aircraft Services.

3

In 1994, Husband began work for F.F.V. Aerotech, a company in the Nashville airport that repairs and overhauls commuter aircraft. As the vice-president of marketing and operations, Husband made a base salary of $80,000 per year. On December 14, 1994, Husband was laid off from his job with F.F.V. Aerotech. Husband was paid an additional two months salary as severance pay.

In 1995, Husband started his own consulting business, Towne Young Associates. In November 1995, Husband entered into a consulting contract with Telecel whereby Telecel paid Husband $15,000 per month for five months. After subtracting approximately $5,000 per month in job expenses which Husband was obligated to pay, Husband received a net, pre-tax income of $10,000 per month from Telecel. On April 26, 1996, Husband entered into a job extension agreement with Telecel which extended his contract through the end of July 1996. Under the extension agreement, Telecel paid Husband a net, pre-tax amount of $7500 per month, and Telecel paid Husband's job expenses. At trial on June 18, 1996, Husband testified that his contract with Telecel may be extended a month or more beyond July 1996.

After his contract with Telecel ends, Husband planned to seek further employment in the aviation industry. He testified that his current earning capacity was $60,000.

In December 1995, Husband married Judy Hagerman. Hagerman earns approximately $12,000 per year. Husband and Hagerman's 1995 joint tax return revealed a joint income of $61,500. With Hagerman's income contribution of $11,854, Husband's 1995 reported taxable income was approximately $50,000.

Having worked for Pan American Airlines for seventeen years, Husband began receiving $347 per month in retirement benefits from Pan American Airlines sometime in 1996.

Wife has worked as a first-grade teacher for twelve years. Wife currently teaches

4

first-grade children at a private school in Memphis, Tennessee, earning a net salary of approximately $1,500 per month. Wife stated that she was not pursuing a master's degree in education because her salary would not increase proportionately with the amount of time and money that would be required for her to attain a master's degree.

Wife testified that she lives in a house over fifty years old which requires additional maintenance, that she does not have a clothes dryer in her house, and that her car has 117,000 miles on it and is in need of $1,400 worth of work on the transmission. Wife testified that her house payment is $943 per month and that she has a total of $4,595 in monthly expenses.

Since July 1995, Husband testified that he has visited the parties' minor child once every six weeks. Since December 1994, Wife stated that Husband has spent seventeen days with the child.

During the trial of this matter, the trial court allowed Husband to file as a late-filed exhibit, a certified copy of the Florida judgment, ordering Husband to pay $500 per month for his child born out of wedlock.

Based on the foregoing facts, the trial court found that Wife's statement of income, needs and expenses is not realistic. The trial court also found that both parties are in good health and in good mental condition and Husband's earning capacity is almost three times that of the Wife's earning capacity.

**LAW**

The issues before this Court are as follows:

1) Whether the trial judge erred in declining to recuse himself;

2) Whether the trial judge erred in awarding Wife rehabilitative alimony in the amount of $1,000.00 per month for seven years;

5

3) Whether the trial judge erred in admitting a certified copy of a Florida child support order into evidence as a late-filed exhibit;

4) Whether the trial judge erred in deducting $500 per month, the amount of child support Husband currently pays for the support of another child born outside the parties' marriage, from Husband's gross income for purposes of determining the amount of child support Husband owes Wife;

5) Whether the trial judge erred in ordering Husband to purchase and maintain $50,000 worth of life insurance in order to secure Wife's award of alimony and $100,000 worth of life insurance in order to secure Husband's child support payment;

6) Whether the trial judge erred in denying Wife's motion to dismiss or stay Husband's post-judgment petition to modify child support and alimony pending this appeal of the final judgment;

7) Whether Wife is entitled to an award of attorney fees on appeal.

It is within a judge's discretion whether to sit or not to sit on a particular case. In re Cameron, 151 S.W. 64, 74 (Tenn. 1912); State of Tenn. ex rel Phillips v. Henderson, 423 S.W.2d 489, 492 (Tenn. 1968); Memphis Bd. of Realtors v. Cohen, 786 S.W.2d 951, 953 (Tenn. Ct. App. 1989); Wiseman v. Spaulding, 573 S.W.2d 490, 493 (Tenn. Ct. App. 1978); Caruthers v. State, 814 S.W.2d 64, 67 (Tenn. Cr. App. 1991). We will not interfere with the exercise of this discretion unless a clear abuse appears on the face of the record. Caruthers, 814 S.W.2d at 67.

The judicial ethics committee faced an issue similar to the issue in the case at bar. In Judicial Ethics Opinion No. 94-2, the Committee addressed the issue of whether a judge should recuse himself from a particular case where the judge had been represented by an attorney of one of the parties in an uncontested divorce action ten years earlier. In holding that the judge did not have a duty to recuse himself, the Committee stated:

> Certainly the passage of ten years after an uncontested divorce, with no further representation during that time, completely obviates the need for recusal.
> Absent any factors other than the single episode of representation in an uncontested divorce ten years ago, the judge's impartiality could not reasonably be questioned under

6

> canon 3C. Similarly, the "appearance of impropriety" of canon 2 also must be measured by a standard of reasonableness; a decade-old representation of the judge by a particular lawyer should not create in the mind of a reasonable person the appearance of impropriety when that lawyer appears before the judge.

Judicial Ethics Opinion No. 94-2 (Tenn. March 21, 1994).

In the present case, the trial judge was represented ten years earlier by Husband's attorney in a contested divorce action which was settled before trial. Husband's attorney has not represented the trial judge since the time of the divorce. Because we find Judicial Ethics Opinion No. 94-2 to be persuasive in this case and because we find that the trial judge did not abuse his discretion in declining to recuse himself, we affirm the trial judge's decision.

In addressing whether the trial judge erred in awarding Wife rehabilitative alimony in the amount of $1,000.00 per month for seven years, we note that the trial court has broad discretion in determining whether to award alimony and in determining the amount and duration of the alimony. T.C.A. § 36-5-101; Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995); Self v. Self, 861 S.W.2d 360, 361 (Tenn. 1993); Brown v. Brown, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994); Loyd v. Loyd, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993); Houghland v. Houghland, 844 S.W.2d 619, 621 (Tenn. Ct. App. 1992); Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986); Lancaster v. Lancaster, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984); Newberry v. Newberry, 493 S.W.2d 99, 102 (Tenn. Ct. App. 1973). As a general rule, we are disinclined to alter a trial court's award of alimony unless it is not supported by the evidence or is contrary to the public policy embodied in the applicable statutes. Brown, 913 S.W.2d at 169; Gilliam v. Gilliam, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988); Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986).

T.C.A. § 36-5-101(d)(1)(1996) provides:

> It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for

7

payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient.

Under the statute, alimony *in futuro* is appropriate where there is relative economic disadvantage and rehabilitation of the disadvantaged party is not feasible. Self, 861 S.W.2d at 361.

When determining an appropriate amount of alimony to award a party, the court shall consider all relevant factors including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
(C) The duration of the marriage;
(D) The age and mental condition of each party;
(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
(G) The separate assets of each party, both real and personal, tangible and intangible;
(H) The provisions made with regard to the marital property as defined in § 36-4-121;
(I) The standard of living of the parties established during the marriage;
(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so;  and
(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

T.C.A. § 36-5-101(d)(1996).

The decision to award alimony is factually driven and requires a balancing of the factors enumerated in T.C.A. § 36-5-101(d)(1). Denton v. Denton, 902 S.W.2d 930, 932 (Tenn. Ct. App. 1995); Loyd, 860 S.W.2d at 412. The need of the spouse to whom alimony is awarded and the ability of the other to pay are two dominant factors to consider

when deciding a proper award of alimony. Aaron, 909 S.W.2d at 410; Kincaid v. Kincaid, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995); Smith v. Smith, 912 S.W.2d 155, 159 (Tenn. Ct. App. 1995); McCarty v. McCarty, 863 S.W.2d 716, 720 (Tenn. Ct. App. 1992); Loyd, 860 S.W.2d at 412; Gilliam, 776 S.W.2d at 86; Lancaster, 671 S.W.2d at 503; Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). Moreover, the fault of a spouse in precipitating a divorce is also a consideration when determining an alimony award. T.C.A. § 36-5-101(d)(1)(K); Aaron, 909 S.W.2d at 410-11; Gilliam, 776 S.W.2d at 86.

A wife whose marriage has been shattered by her husband's misconduct should not be left in a financial condition inferior to her economic situation prior to the parties' divorce. Aaron, 909 S.W.2d at 410-11; Gilliam, 776 S.W.2d at 86; Shackleford v. Shackleford, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980). However, in recognizing the premise that a divorce should not economically prejudice an innocent spouse, this idea must be tempered by the statutory factors set forth in T.C.A. § 36-5-101(d)(1). Brown, 913 S.W.2d at 169-70.

Based upon the evidence presented at trial, we conclude that an award of rehabilitative alimony is not appropriate in this case. In consideration of the disparity in the parties' earning capacities, Wife's limited earning capacity, Wife's limited resources, Wife's age, the twenty-seven and one-half year duration of the marriage, the parties' standard of living established during the marriage, the tangible and intangible contributions that Wife made during the parties' marriage, and the relative fault of Husband in precipitating this action for divorce, we agree that this is an appropriate case for an award of alimony *in futuro*. We, therefore, modify the trial court's award of rehabilitative alimony of $1,000 per month for seven years to provide that Wife receive an award of permanent alimony in the amount of $1,000 per month, which will terminate upon Wife's death or remarriage.

In determining whether the trial court erred in admitting a certified copy of a Florida child support order into evidence as a late-filed exhibit, we note that the admissibility of evidence is a matter which rests within the sound discretion of the trial court. State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993); State v. Williams, 657 S.W.2d 405, 411-12

(Tenn. 1983); Murray v. State, 377 S.W.2d 918, 920 (Tenn. 1964); Wright v. Quillen, 909 S.W.2d 804, 809 (Tenn. Ct. App. 1995); State v. Rhoden, 739 S.W.2d 6, 13 (Tenn. Cr. App. 1987). This Court will not interfere with the trial court's exercise of its discretion absent clear abuse. Williams, 657 S.W.2d at 411-12; Murray v. State, 377 S.W.2d at 920; Rhoden, 739 S.W.2d at 13. Because the trial court did not abuse its discretion in admitting a certified copy of a Florida child support order into evidence as a late-filed exhibit, we affirm the ruling of the trial court.

In addressing whether the trial judge erred in deducting $500 per month, the amount of child support Husband currently pays for the support of another child born outside the parties' marriage, from Husband's gross income for purposes of determining the amount of child support Husband owes Wife, the Tennessee Child Support Guidelines ("Guildelines") provide that the amount of child support awarded is based upon a flat percentage of the obligor's net income. Tenn. Comp. R. & Regs. title 1240, Ch. 2-4-.03(2). The Guidelines state:

> Net income is calculated by subtracting from gross income of the obligor FICA (6.2% Social Security plus 1.45% Medicare for regular wage earners and 12.4% Social Security plus 2.9% Medicare for self-employed, as of 1991, or any amount subsequently set by federal law as FICA tax) the amount of withholding tax deducted for a single wage earner claiming one withholding allowance (copies of appropriate table will be provided to courts with guidelines), and **the amount of child support ordered pursuant to a previous order of child support for other children**.

Tenn. Comp. R. & Regs. title 1240, Ch. 2-4-.03(4) (emphasis added).

Because the Guidelines expressly provide that the amount of child support ordered pursuant to a previous order of support shall be deducted from an obligor's gross income in determining the amount of child support an obligor owes, the trial court did not err in deducting $500 per month, the amount of child support Husband currently pays for the support of another child born outside the parties' marriage, from Husband's gross income for purposes of determining the amount of child support Husband owes Wife.

In addressing whether the trial judge erred in ordering Husband to purchase and

10

maintain $50,000 worth of life insurance in order to secure Wife's award of alimony and $100,000 worth of life insurance in order to secure Husband's child support payment, T.C.A. 36-5-101(g)(1996)(emphasis added) provides that:

> The court **may** direct either or both parties to designate the other party and the children of the marriage as beneficiaries under any existing policies insuring the life of either party and maintenance of existing policies insuring the life of either party, or the purchase and maintenance of life insurance and designation of beneficiaries.

Because the statute expressly provides that the trial judge may direct a party to purchase and maintain a life insurance policy for the benefit of the other party and children of the marriage, the legislature specifically left the determination of whether to order a party to procure insurance for the benefit of the other party and children of the marriage to the discretion of the trial court. We will not interfere with the trial court's exercise of its discretion absent a showing of abuse. Because the trial court did not abuse its discretion in directing Husband to purchase and maintain $100,000 worth of life insurance for the benefit of the parties' minor child, we affirm this order of the trial court. However, because we modified the trial court's award of rehabilitative alimony to provide Wife with an award of permanent alimony in the amount of $1,000 per month, we modify the trial court's order that Husband shall purchase and maintain $50,000 worth of life insurance to provide that Husband shall purchase and maintain $100,000 worth of life insurance in order to secure Wife's award of alimony.

In determining whether the trial judge erred in denying Wife's motion to dismiss or to stay Husband's post-judgment petition to modify child support and alimony pending this appeal of the final judgment, Tenn. R. Civ. P. 62.03 provides:

> When an appeal is taken from an interlocutory or final judgment in actions specified in Rule 62.01 or in actions for alimony or child support, the court in its discretion may suspend relief or grant whatever additional or modified relief is deemed appropriate during the pendency of the appeal and upon such terms as to bond or otherwise as it deems proper to secure the other party.

The express language of the rule gives the trial court the discretion to suspend or grant whatever relief is deemed appropriate during the pendency of an appeal in an action for

11

alimony or child support. We, therefore, affirm the trial court's order denying Wife's motion to dismiss or to stay Husband's post-judgment petition to modify child support and alimony pending this appeal of the final judgment.

Finally, Wife requests that this Court award attorney fees necessitated by this appeal. We note, however, that pursuant to the consent decree of divorce both parties agreed to pay their own attorney fees. In addition, where both parties are partially successful on appeal, this Court has held that no attorney fees should be awarded in respect to the appeal. Storey v. Storey, 835 S.W.2d 593, 598 (Tenn. Ct. App. 1992); Baggett v. Baggett, 512 S.W.2d 292, 294 (Tenn. Ct. App. 1973). Thus, because both parties agreed to pay their own attorney fees in the consent decree of divorce and because both parties were partially successful on appeal, we decline, in this case, to award Wife attorney fees incurred on appeal.

The judgment of the trial court is hereby affirmed in all respects except as to Wife's award of alimony and the amount of insurance that Husband shall purchase and maintain for the benefit of Wife. Costs on appeal shall be divided equally between Husband and Wife.

_____
HIGHERS, J.

CONCUR:

_____
CANTRELL, J.

12

KOCH, J.