# FILED

December 10,1999

Cecil Crowson, Jr.
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE

## AT KNOXVILLE

| | |
|---|---|
| STEVEN CLAY HOLLEY, | ) C/A NO. 03A01-9812-CH-00391 |
| | ) |
| Plaintiff-Appellant, | ) HAMILTON CHANCERY |
| | ) |
| vs. | ) HON. R. VANN OWENS, |
| | ) CHANCELLOR |
| SHERRI LYNN HUFFORD HOLLEY, | ) |
| | ) AFFIRMED AND |
| Defendant-Appellee. | ) REMANDED |

ALBERT L. WATSON, III, Chattanooga, for Plaintiff-Appellant.

JOHN P. KONVALINKA and MATHEW D. BROWNFIELD, GRANT, KONVALINKA & HARRISON, P.C., Chattanooga, for Defendant-Appellee.

## **O P I N I O N**

Franks, J.

In this divorce action, the Trial Judge granted the parties a divorce, and allocated the marital and separate assets.

The husband has appealed and raised these issues:

1. The Trial Court abused his discretion in the division of the parties' marital and separate assets.

2. The Trial Court abused his discretion by failing to disqualify himself, as his impartiality might reasonably be questioned.

The parties were married in June of 1993, and no children were born to the union. The parties separated in 1997, and stipulated to the grant of a divorce. During the marriage, the husband became involved in the air filtration service business.

The Chancellor awarded the Wife all items of household furnishings then in her possession, and awarded the Husband all the remaining property, including the real estate owned at 7602 Asherton Lane, 122 Cedar Lane, and 2811-2813 Dodson Avenue, in Chattanooga.

The Chancellor found the value of all the marital assets to be $601,981.00, and to "equalize the division of assets," the Chancellor ordered the husband to "pay to defendant the sum of $301,000.00 for her share of the equity in the marital assets." The Court gave the husband the option of conveying the former residence of the parties (7062 Asherton Lane), and the property at 122 Cedar Lane to the Wife, in lieu of $200,000.00 cash, with the remainder paid within six months of the final order.

Our review of a division of marital property is *de novo* upon the record with a presumption of the correctness of the trial court's findings of fact. T.R.A.P. Rule 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn.1984). Trial courts have wide discretion in the manner in which marital property is divided, and their decisions are accorded great weight on appeal. *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994). The Trial Court's decision on the distribution of marital property is presumed correct unless the evidence preponderates otherwise. T.R.A.P. Rule 13(d); *Wallace*, 733 S.W.2d at 107.

Before dividing the marital estate, the trial court must classify the parties' property as either marital or separate, because only marital property is subject to the trial court's powers of equitable distribution. *Dunlap v. Dunlap*, 996 S.W.2d 803 (Tenn. Ct. App. 1998). In classifying the parties' property as either marital or separate, the trial court is vested with wide discretion, and its decision is entitled to great weight on appeal. *Fisher*

*v. Fisher*, 648 S.W.2d 244 (Tenn.1983); *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973).

The husband argues that some property classified by the Court as marital property was in fact his separate properties, and disputes the values assigned to some of the properties. The dispute focuses on the valuation of the Air Filtration Service (AFS).

In early 1990, prior to the marriage, the husband and two others purchased AFS. There was a factual dispute over the involvement of the wife in the acquisition and operation of the business. However, the husband admitted that the wife performed some limited duties at the business, including computer work, setting up the office, and was empowered to sign the company checks.

If a spouse substantially contributes to the preservation and appreciation of separate property, an increase in value of that property during the marriage is considered marital property. *See* T.C.A. § 36-4-121(b)(1)(B). A substantial contribution may be made by a spouse as a homemaker or parent. T.C.A. §36-4-121(b)(1)(C). *Also see Brown v. Brown*, 913 S.W.2d 163 (Tenn. Ct. App. 1994), and *Smith v. Smith*, 709 S.W.2d 588 (Tenn. Ct. App. 1985).

The Chancellor found the wife had made contributions to the marriage, both indirectly and also directly as a wage-earner. The husband admitted at the hearing that the wife contributed to their first home by doing such things as planting flowers and painting the house. Throughout the marriage, the wife performed such tasks as cooking, cleaning, doing laundry, and generally taking care of the home. The wife also worked at various jobs, contributing that money to the marriage as well. Through her contributions as homemaker and as a wage earner, she enabled her husband to devote his time the his business, and by so doing, the wife made a substantial contribution to AFS, which was the basis of the Chancellor 's determination that the increase in value of AFS was marital property.

As for the value of the increase, the Chancellor's decision is supported by the

evidence. The husband offered evidence that AFS was worth $130,000 at the time of the marriage and $255,000 at the time of the filing. The wife offered evidence that the business increased by $637,934 during the marriage. The wife's expert testified the business was worth $234,790 in 1993 and $872,724 in 1998. He based his valuation on the "IBITDA" method, which is cash-flow before interest, taxes, depreciation and amortization.

The Court found the increase in value was marital property in the amount of $400,000. The Trial Court may place a value on marital assets that is within the range of the evidence submitted. *Koch v. Koch*, 874 S.W.2d 571 (Tenn. Ct. App. 1993). Accordingly, we affirm the value placed on the increase by the Chancellor, as the evidence does not preponderate otherwise.

Next, the husband appeals the classification and valuation of the property at 122 Cedar Lane, classifying the equity in the property as a marital asset. The property was purchased by the husband prior to the marriage, however, the property was bought six months before the parties were married. At the time the parties had been living together for a number of years and intended to marry. The Chancellor emphasizes in his memorandum opinion the significance of the parties living together prior to the marriage and combining their resources at an earlier time. The evidence supports the Chancellor's determination. The parties were living together at the time of the purchase, and the wife offered evidence, which the Chancellor found credible, that she was involved in the husband's business venture, for which the property was to be used. In this regard, *see Mullins v. Mullins,* 1997 WL 672050 (Tenn. Ct. App. 1997), and *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988).

Next, the husband objects to the Court's finding as to the 1990 Infiniti Q45, saying that it was clearly separate property and "worth more." The husband admitted that he listed the car as marital property before the Court. As for the value, the husband assigned a value of $10,750, while the Wife said it was worth $5,000 because of damage caused by a

flash flood. The Chancellor determined the value to be $5,000, which finding was within his discretion. *See Koch*.

As to the furniture, the Chancellor stated that it had already been divided equitably between the parties, and each took possession of a portion at the time of the divorce. The husband argues that he purchased most of the furniture before the marriage with his own funds. However, the parties treated the property as marital property during the marriage. *See Newberry v. Newberry*, 493 S.W.2d 99 (Tenn. Ct. App. 1972); *McClellan v. McClellan*, 873 S.W.2d 350, 351 (Tenn. Ct. App. 1993).

The husband also questions the Trial Court's finding as to various investment properties. In this regard, the Trial Court found the husband's credibility to be in doubt with reference to certain "investments" made to friends, without any documentation. The Chancellor relates:

> [Mr. Holley] attempted to justify an "investment" of $25,000.00 in a friend's project without any written documentation or proof of same. Likewise, his "loan" to a friend in the amount of $11,500.00 seemed - - in light of his other testimony concerning financial difficulties - - unbelievable. Mr. Holley's and his secretary's testimony in regard to a $25,000.00 "note" between him and the business was highly suspect.

The findings of the trial court which are dependent upon determining the credibility of witnesses is accepted on appeal because he has the opportunity to observe the manner and demeanor of the witnesses while testifying. *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Accordingly, we find no basis to disturb the Chancellor's finding of values as to these equities.

Finally, the husband insists the Chancellor should be disqualified as the judge in this case.

Litigants are entitled to the "cold neutrality of an impartial court." *Leighton v. Henderson*, 414 S.W.2d 419, 421 (Tenn. 1967), and the decision of whether recusal is warranted must in the first instance be made by the judge himself. Unless the grounds for

recusal fall within those enumerated in Tenn. Const. art. 6, § 11 or T.C.A. § 17-2-101 (1994), the Trial Judge's refusal to recuse is reviewed as an abuse of discretion. *State v. Raspberry*, 875 S.W.2d 678, 681 (Tenn. Crim. App. 1993); *Memphis Bd. of Realtors v. Cohen*, 786 S.W.2d 951, 953 (Tenn. Ct. App. 1989). In making this decision, instead of basing it on subjective notions of his impartiality, a judge must be objective and ask what a reasonable, disinterested person knowing all the relevant facts would think about the judge's impartiality. *Kinard v. Kinard*, 986 S.W.2d at 228; *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994).

When the wife's expert witness, Bruce Neal, was called as a witness, the Trial Court advised the parties that Mr. Neal had done the Judge's tax returns for several years, and that he did not know him socially or otherwise, other than on the occasions of tax preparation. He further observed that he thought someone else in his office had done 95 percent of the work. He also advised the parties that he could hear "Mr. Neal's testimony without any bias, any prejudice or being influenced not more by him than any other professional. In fact, I have criticized him at work a time or two. . . ."

The husband argues that the Chancellor should have recused himself, and that the Chancellor found Mr. Neal to be a credible witness. The wife counters that no motion for recusal was filed, no request for recusal was ever clearly made, and the record does not support recusal. However, the Court did consider the issue of recusal, and in his discretion found that recusal was unnecessary.

The exercise of discretion by a trial judge to sit on a case will not be reversed "unless a clear abuse appears on the fact of the record." *Young v. Young*, 971 S.W.2d 386 at 390 (Tenn. Ct. App. 1997). The relationship between the Chancellor and the witness is that the witness, or someone in his office, prepares the Chancellor's tax returns. This relationship, without more, is not grounds for disqualification. The rules governing disqualification of a judge list instances in which "a judge shall disqualify himself":

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;

(c) the judge knows that he or she . . . or the judge's spouse, parent, or child wherever residing, or any other member of the judge's family residing the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding. . .

(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such person:

(i) is a party to the proceeding, or an officer, director or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have more than de minimus interest that could be substantially affected by the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

The relationship does not fall within one of these prohibited categories.

The case of *Wiseman v. Spaulding*, 573 S.W.2d 490 (Tenn. Ct. App. 1978) presented an analogous situation. In that case, the plaintiff filed a motion asking that the Trial Judge recuse himself because of a personal friendship with the defendant. The motion was supported by affidavit of the plaintiff as to various facts and circumstances from which she concluded that the judge should recuse. On this issue, the Court held:

[A]t this point that the issue before this Court is not the propriety of the judicial conduct of the Trial Judge, but whether he committed reversible error, i.e. committed error which resulted in an unjust disposition of the cause.

\*\*\*\*\*

The affidavit of appellant contains nothing more than circumstances from which it might be inferred that the Trial Judge might have some reason to have a favorable or unfavorable opinion of the parties. The result being correct, the facts alleged are not sufficient to warrant a finding by this Court that the Trial Judge committed reversible error in refusing to recuse himself retroactively, thereby vacating all his previous actions in the case.

*Wiseman v. Spaulding*, 573 S.W.2d at 493.

Likewise, in the instant case, the circumstances are not sufficient to warrant a finding by this Court that the Trial Judge erred in refusing to recuse himself. Accordingly, we affirm the judgment of the Trial Court.

The cost of the appeal is assessed to Steven Clay Holley.

_____
Herschel P. Franks, J.

CONCUR:

_____
Houston M. Goddard, P.J.

_____
D. Michael Swiney, J.